U.S. COURTS

MAY 9 2023

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

ROBERT B. WHITE (ISB #4438)
GIVENS PURSLEY LLP
601 West Bannock Street
P.O. Box 2720
Boise, Idaho 83701-2720
Telephone: 208-388-1200
Facsimile: 208-388-1300
rbw@givenspursley.com

David M. Hoffman (*pro hac vice application forthcoming*)
FISH & RICHARDSON P.C.
111 Congress Avenue, Suite 810
Austin, TX 78701
Telephone: (512) 472-5070
Facsimile: (512) 320-8935
hoffman@fr.com

*Counsel for Plaintiff, Lovevery, Inc.*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LOVEVERY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DESMOND T. ADEMILUYI D/B/A PLAYGENIUS.COM, ADEYINKA O. ODELANA, MAYOWA O. OYEDIRAN, MB AGENCY D/B/A OMYTEQ, AND JANE DOE 1, WHOSE TRUE NAME IS UNKNOWN;<br><br>Defendants. | Case No. 1:23-cv-240-BLW<br><br>**VERIFIED ORIGINAL COMPLAINT, APPLICATION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE, AND MOTION FOR PRELIMINARY INJUNCTION**<br><br>**FILED UNDER SEAL** |

Plaintiff, Lovevery, Inc., ("Lovevery" or "Plaintiff"), by and through its undersigned counsel, brings this action for trade secret misappropriation, breach of contract, and common law business tort claims against Desmond T. Ademiluyi d/b/a PlayGenius.com ("Defendant Ademiluyi"), Adeyinka O. Odelana ("Defendant Odelana"), Mayowa O. Oyediran ("Defendant Oyediran"), Mb Agency d/b/a Omyteq ("Defendant Mb Agency"), and Jane Doe 1, whose true name is unknown ("Defendant Doe 1") (Defendant Ademiluyi, Defendant Odelana, Defendant Oyediran, Defendant Mb Agency, and Defendant Doe 1 are collectively referred to as "Defendants" and individually referred to as "Defendant") would respectfully show the Court as follows:

## I.     SUMMARY OF THE ACTION

1.      In 2020, Lovevery, a pioneering child development and toy company based in Boise, hired Defendant Ademiluyi as a website developer.  Lovevery paid Defendant Ademiluyi a hefty salary and allowed him to work remotely from California.  Defendant Ademiluyi repaid that trust and confidence by betraying his employer and in cooperation with the co-Defendants starting a rival toy company called PlayGenius.com.  This company advertises that later this month (May 27, 2023), it will begin selling knock-offs of Lovevery's products with a company name taken from Lovevery and intellectual property belonging to Lovevery.  Defendant Ademiluyi has further taken Lovevery confidential computer code and posted it publicly online. He did all of this while continuing to draw his salary and benefits – and continues to do this till today.

2.      Defendant Ademiluyi's actions violate numerous provisions of his Employment Agreement with Lovevery, including his agreement to be loyal, his agreement to not compete against Lovevery, and his agreement to not use or disclose Lovevery's confidential materials.

**PLAINTIFF'S ORIGINAL COMPLAINT,**                                                    **Page 1**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

Beyond this, any and all work on playgenius.com or related apps are the property of Lovevery via the terms of the Employment Agreement and yet Defendants maintain possession of this property. Defendant Ademiluyi's co-Defendants have induced and encouraged the violation of Defendant Ademiluyi's Employment Agreement. Defendants' knock-off products further violate the patent and trademark rights of Lovevery. As set forth below and in the accompanying application for a TRO and preliminary injunction, Defendants' disloyal and underhanded actions threaten imminent irreparable harm to Lovevery and must be stopped.

## II.    THE PARTIES

### Lovevery

3.      Lovevery is a Boise-based company that was incorporated in Delaware and founded in 2015 by current Boise residents Jessica Rolph and Roderick Morris. Lovevery provides educational materials for children, such as Montessori-inspired toys, books, and games, and materials that help empower parents in raising their children. Since its founding, Lovevery has grown to become one of the most respected and influential names in child development toys and activities while growing to include a family of 253 employees with 123 of them in the Boise area. *See* Shah Decl. ¶ 1.

4.      Lovevery's educational materials are designed and curated in Idaho, in consultation with a brain trust of child development experts. Lovevery's educational materials and toys are scrupulously tested for safety and undergo a rigorous final inspection before being shipped to customers. *See* Hoffman Decl., Exhibit 1 at 13-14 (printout of FREQUENTLY ASKED QUESTIONS, https://lovevery.com/pages/help (last visited May 6, 2023)).

**PLAINTIFF'S ORIGINAL COMPLAINT,**                                      **Page 2**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

5.      Lovevery is well known for selling "Play Kits." Lovevery's Play Kits are distinctly marked boxes that are packed with educational materials optimized for children of a certain age range. For example, "The Senser Play Kit," which is shown below, helps children that are between 5 and 6 months old "[d]evelop language skills," "[s]trengthen coordination and dexterity," "[p]ractice fine and gross motor skills," and "[h]ave fun with tummy time":



Hoffman Decl., Exhibit 1 at 41 (THE SENSER PLAY KIT, https://lovevery.com/products/the-play-kits-the-senser (last visited May 4, 2023)).

6.      The Senser Play Kit pictured above includes: a "Magic Tissue Box," "Magic Tissues," an "Organic Cotton Rainbow Ball," a "'Parts of Me' Book," a "Play Guide for Months 5-6," a "Play Socks," a "Spinning Rainbow," and a "Tummy Time Wobbler." *Id*.

7.      One of the many drivers of Lovevery's success has been its uncanny ability to connect with both new parents and the families of those new parents through the Lovevery website and e-commerce platform.  Over the past few years, Lovevery has invested considerable sums of money into developing a bespoke e-commerce platform that is easy for new parents and

families to navigate while providing rock-solid behind the scenes commerce functionality tuned

and focused on the challenges in providing products and services to the new family market,

including serving families with children with developmental delays.  The pioneering software

that provides this full range of both customer facing and backend support is known internally at

Lovevery as "PlayGenius."

8.     Lovevery is also well known for a software package called "The Lovevery App."

The Lovevery App, which is available on Apple Inc.'s "App Store," covers topics including:

"[b]rain [d]evelopment," "[f]eeding, [l]anguage & [c]ommunication," "[m]otor [s]kills,"

"[p]lay," "[s]leep," "[s]ocial-[e]motional," and "[t]ummy [t]ime."  Hoffman Decl., Exhibit 1 at

53-56 (LOVEVERY INTRODUCES NEW APP FOR PARENTS,

https://lovevery.com/community/blog/product-recommendations/lovevery-introduces-new-app-

for-parents/ (last visited May 4, 2023)); *see* Hoffman Decl., Exhibit 2 at 5-6 (LOVEVERY ON THE

APP STORE, https://apps.apple.com/us/app/lovevery/id1556748552 (last visited May 6, 2023))

("Lovevery's new app gives Play Kit subscribers daily baby and toddler activities, parenting tips,

child development information, and expert insight at their fingertips. A natural complement to

The Play Kits, the app includes hundreds of stage-based activities and ideas[.]"). Lovevery is

actively working on making The Lovevery App available on additional app stores, such as the

Google Play Store. *See* Hoffman Decl., Exhibit 1 at 30 (APP FOR STAGE-BASED PLAY &

ACTIVITIES, https://lovevery.com/pages/mobile (last visited May 6, 2023)).

9.     Lovevery owns United States intellectual property related to its business,

including issued patents and trademarks. *See, e.g.*, U.S. Patent Nos. 10,987,605 (titled, "Child

Development Toy"), 11,162,285 (titled, "Door Hinge"), 11,247,139 (titled, "Activity Box");

11,369,892 (titled, "Reconfigurable Infant Play Mats and Displays"); U.S. Des. Patent Nos.

D896,320 (titled, "Flashlight Toy"), D939,028 (titled, "Ball Run Toy"), D951,117 (titled,

"Weight Scale Toy"), D977,593 (titled, "Sink Toy"); LOVEVERY, Registration No. 5,425,349;

LOVEVERY, Registration No. 5,425,351; LOVEVERY, Registration No. 5,747,435;

LOVEVERY, Registration No. 6,113,852; LOVEVERY, Registration No. 6,113,853;

LOVEVERY, Registration No. 6,931,688.

10.    Lovevery is pursuing United States intellectual property related to its business,

including pending patent and trademark applications. *See, e.g.*, U.S. Patent Application No. 17

/671,151 (filed Feb. 14, 2022); U.S. Trademark Application Serial Nos. 90/451,503 (filed Jan. 6,

2021), 90/145,527 (filed Feb. 21, 2023), 97/301,794 (filed Mar. 8, 2022).

11.    Lovevery's rapid growth, which has allowed it to hire hundreds of employees, has

not gone unnoticed in the community. *See, e.g.*, Hoffman Decl., Exhibit 3 (Sharon Fisher,

*Lovevery: A Local Success Story*, BUILT IN IDAHO (Nov. 8, 2022),

https://www.builtinidaho.org/news/lovevery-a-local-success-story) ("Currently, Lovevery is

housed in the Athlos Academies building at 10th and Idaho, which was formerly Macy's. . . . Of

the company's almost 300 employees, about half of them now come to the office on a regular

basis[.]"); Hoffman Decl., Exhibit 4 (Karen Lehr, *Made in Idaho: Boise-Based Subscription*

*Service Focuses on Early Childhood Development*, IDAHO NEWS 6 (Aug. 6, 2020),

https://www.kivitv.com/news/made-in-idaho/made-in-idaho-boise-based-subscription-service-

focuses-on-early-childhood-development) ("[Lovevery] anticipate the business to double in size

over the next few years."); Hoffman Decl., Exhibit 5 (Anna Daly, *Boise Startup Grows with Line*

*of Toys and Products for Babies and Toddlers*, BOISEDEV (June 30, 2020),

https://boisedev.com/news/2020/06/29/boise-toy/) ("Lovevery, a local startup focused on child

development and subscription-based toys has big plans for growth in Boise."); Hoffman Decl.,

**PLAINTIFF'S ORIGINAL COMPLAINT,**                                                    **Page 5**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

Exhibit 6 (Sharon Fisher, *With $20 Million in Funding, Lovevery Isn't Playing Around*, IDAHO BUS. REV. (Oct. 21, 2019), https://idahobusinessreview.com/2019/10/21/with-20-million-in-funding-lovevery-isnt-playing-around/) ("Lovevery has also graduated from Trailhead, the Boise-based coworking space, to a seven-year lease in the Athlos Academy building. Its space on the second floor will expand as the company grows, said Jessica Rolph, co-founder and CEO.").

12.     Lovevery's headquarters is located at 918 W Idaho St, Ste 220, Boise, ID 83702-5715.

Defendant Ademiluyi

13.     Defendant Ademiluyi is a current employee of Lovevery, where he serves as a Front End Engineer in Lovevery's Tech & Digital Department working primarily on development and support of Lovevery's PlayGenius software. At the start of 2023, Lovevery anticipated paying Defendant Ademiluyi an anticipated yearly salary of almost $160,000, which does not take into account Lovevery's generous non-salary perks and benefits.

14.     On information and belief, Defendant Ademiluyi is a citizen of Nigeria and relocated to the United States after he obtained a Masters of Technology in Computer Science in 2015 from Nigeria's Ladoke Akintola University of Technology. Defendant Ademiluyi is believed to have completed a coding boot camp in 2015 at the University of California, Irvine's Division of Continuing Education. Defendant Ademiluyi is also believed to have obtained a PhD in Computer Science in 2023 at the online school Aspen University.

15.     On October 11, 2020, Defendant Ademiluyi agreed to join Lovevery "on a full-time basis as a Front-End Engineer, effective October 26, 2020." *See* Shah Decl., Exhibit 1, Defendant Ademiluyi Employment Agreement [hereinafter "Employment Agreement"].

16.    As recently as January 2023, Defendant Ademiluyi traveled to Boise, Idaho for meetings related to his job at Lovevery.

17.    As discussed later (*see infra* Part IV), since sometime after starting his work at Lovevery, Defendant Ademiluyi appears to have started a rival company doing business under the name and through the website PlayGenius.com.

18.    The PlayGenius.com website is accessible from Idaho and is highly interactive. For example, the PlayGenius.com website allows visitors to place orders for products, create accounts for PlayGenius.com, and sign up for newsletters. *See* Hoffman Decl., Exhibit 7 at 27 (MONTESSORI EDUCATIONAL BOXES, https://playgenius.com/collections/montessori-educational-boxes (last visited May 4, 2023)); *id.* at 22 (CREATE ACCOUNT, https://playgenius.com/account/register (last visited May 4, 2023)). Additionally, the PlayGenius.com website includes a hyperlink link for visitors to "[c]hat with [it]." *Id.* at 27.

19.    On information and belief, Defendant Ademiluyi's previously known addresses include 5345 Pennsylvania St, Merrillville, IN 46410-1642. On information and belief, Defendant Ademiluyi's last known address is 3304 Avenida Del Presidente Apt 2, San Clemente, CA 92672-4535.

20.    On information and belief, Defendant Ademiluyi is the "owner" of the following email accounts: DesmondToyus@gmail.com, DesmondToyus@icloud.com, DesmondToyus@yahoo.com, and PlayGenius.gp@gmail.com.  Lovevery assigned Defendant Ademiluyi the following email address for his business use at Lovevery: Desmond@lovevery.com.

21.    On information and belief, Defendant Ademiluyi is the "owner" of the following social media accounts: https://www.facebook.com/desmondtoye,

https://www.facebook.com/PlayGeniusKids, https://www.linkedin.com/in/desmondademiluyi,

https://www.instagram.com/dr.desmondtoye/, https://www.instagram.com/playgeniuskids/, and

https://www.youtube.com/@PlayGeniusdotcom. *See* Hoffman Decl., Exhibits 8-12.

22.     On information and belief, Defendant Ademiluyi is the "owner" of the following

software development account: https://github.com/desmondtoyus. *See* Hoffman Decl., Exhibit

13

23.     Defendant Ademiluyi may be served with the summons and complaint in any

manner permitted by the Federal Rules of Civil Procedure, including "in a judicial district of the

United States" in accordance with FED. R. CIV. P. 4(e)(1)-(2), since he is (i) not a minor, (ii) on

information and belief, not an incompetent person, and (iii) has not filed a waiver. FED. R. CIV.

P. 4. Further, to the extent that "service on the party" is required under FED. R. CIV. P. 5,

Defendant Ademiluyi may be served in any manner permitted by the Federal Rules of Civil

Procedure, including any manner in accordance with FED. R. CIV. P. 5(b)(2).

Defendant Odelana

24.     On information and belief, Defendant Odelana is Defendant Ademiluyi's mother

and business partner.

25.     On information and belief, Defendant Odelana is a citizen of Nigeria and

relocated to the United States sometime after 2000.

26.     On information and belief, Defendant Odelana has studied at Nigeria's University

of Lagos. On information and belief, Defendant Odelana has further studied at the Governors

State University and the Central Michigan University. On information and belief, Defendant

Odelana's coursework has included computer science classes.

27.     Based on tax records, Defendant Odelana is the current owner of 5345 Pennsylvania St, Merrillville, IN 46410-1642. Hoffman Decl., Exhibit 14. On information and belief, Defendant Odelana's last known address is 5345 Pennsylvania St, Merrillville, IN 46410-1642.

28.     On information and belief, Defendant Odelana is the "owner" of the following email accounts: Iuyinkalana98@yahoo.com, Wadeyinka11@gmail.com, Wyinkalana3@yahoo.com, Yinkalana@hotmail.com, Yinkalana@prodigy.net, and Yinkalana@yahoo.com.

29.     On information and belief, Defendant Odelana is the "owner" of the following social media account: https://www.facebook.com/adeyinka.wilson. *See* Hoffman Decl., Exhibit 15.

30.     Defendant Odelana may be served with the summons and complaint in any manner permitted by the Federal Rules of Civil Procedure, including "in a judicial district of the United States" in accordance with FED. R. CIV. P. 4(e)(1)-(2), since she is (i) not a minor, (ii) on information and belief, not an incompetent person, and (iii) has not filed a waiver. FED. R. CIV. P. 4. Further, to the extent that "service on the party" is required under FED. R. CIV. P. 5, Defendant Odelana may be served in any manner permitted by the Federal Rules of Civil Procedure, including any manner in accordance with FED. R. CIV. P. 5(b)(2).

<u>Defendant Oyediran</u>

31.     On information and belief, Defendant Oyediran is a business partner and friend of Defendant Ademiluyi.

32.     On information and belief, Defendant Oyediran is a citizen of Nigeria and is employed as a lecturer at Nigeria's Ajayi Crowther University.

33.     On information and belief, Defendant Oyediran has obtained a PhD in Computer Engineering from Nigeria's Ladoke Akintola University of Technology.

34.     On information and belief, Defendant Oyediran is the "owner" of the following email accounts: M.oyediran306@gmail.com, Mayor_yuppy02@yahoo.com, and Mo.oyediran@acu.edu.ng.

35.     On information and belief, Defendant Oyediran is the "owner" of the following social media accounts: https://www.facebook.com/oyediran.mayowa and https://www.instagram.com/mayor_yuppy/.  *See* Hoffman Decl., Exhibits 16-17.

36.     Defendant Oyediran may be served with the summons and complaint in any manner permitted by the Federal Rules of Civil Procedure, including "at a place not within any judicial district of the United States" in accordance with FED. R. CIV. P. 4(f)(1)-(3), since he is (i) on information and belief, not a minor, (ii) on information and belief, not an incompetent person, and (iii) has not filed a waiver. FED. R. CIV. P. 4. Further, to the extent that "service on the party" is required under FED. R. CIV. P. 5, Defendant Oyediran may be served in any manner permitted by the Federal Rules of Civil Procedure, including any manner in accordance with FED. R. CIV. P. 5(b)(2).

Defendant Mb Agency

37.     On information and belief, Defendant Mb Agency is a business partner of Defendant Ademiluyi.

38.     Defendant Mb Agency is a France based company that is purportedly "a group of innovative B2B [i.e., business to business] & B2C [i.e., business to client] startups." Hoffman Decl., Exhibit 18 (FRONT PAGE, https://mbagency.online (last visited May 4, 2023)).

**PLAINTIFF'S ORIGINAL COMPLAINT,**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

**Page 10**

39.     Defendant Mb Agency's founder and current CEO and President is Mohamed Belloul.

40.     Defendant Mb Agency "[v]ia the OMYTEQ agency[] . . . [provides services related to] web & mobile development projects." *Id.* These services include the "creation & redesign of [] [] websites," the "[d]evelopment of . . . applications," and the "[c]reation of [] marketing materials." *Id.*

41.     The Omyteq website, which is offered in both French and English, says that Omyteq offers its clients with help "from start to finish: design, development, optimization and maintenance." Hoffman Decl., Exhibit 19 at 11 (MOBILE DEVELOPMENT AGENCY, https://omyteq.com (last visited May 4, 2023)).

42.     Omyteq's projects include the "BlaBla Kids" app. *See id.* at 11 (BLABLA KIDS, https://omyteq.com/apps/BlablaKids/BlablaKids.html# (last visited May 4, 2023)).

43.     The Omyteq website is accessible from Idaho and is highly interactive. For example, the Omyteq website includes a form where visitors can submit their name, email address, phone number, and a message. *See id.* at 8-9. Additionally, the Omyteq website includes a link that allows visitors to "[b]ook [a] FREE strategic call with one of [its] advisors." *Id.* (through the hyperlink "Let's Talk!" providing a link to STRATEGIC CALL - OMYTEQ, https://calendly.com/omyteq_fr/anglais (last visited May 6, 2023)).

44.     On information and belief, Defendant Mb Agency's business address is 17 Rue De Solferino, Reims, 51100 France.

45.     On information and belief, Defendant Mb Agency is the "owner" of all email accounts with the domain name "Mbagency.online" and "Omyteq.com."

**PLAINTIFF'S ORIGINAL COMPLAINT,**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

**Page 11**

46.    Defendant Mb Agency may be served with the summons and complaint in any manner permitted by the Federal Rules of Civil Procedure, including "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." FED. R. CIV. P. 4(h)(2). Further, to the extent that "service on the party" is required under FED. R. CIV. P. 5, Defendant Mb Agency may be served in any manner permitted by the Federal Rules of Civil Procedure, including any manner in accordance with FED. R. CIV. P. 5(b)(2).

Defendant Doe 1

47.    On information and belief, Defendant Doe 1 is a business partner of Defendant Ademiluyi.

48.    The true name, sex, and identity of Defendant Doe 1 are unknown.

49.    On information and belief, Defendant Doe 1 is the "owner" of the following email account: Christinaolla216@gmail.com.

50.    Defendant Doe 1 may be served with the summons and complaint in any manner permitted by the Federal Rules of Civil Procedure. Further, to the extent that "service on the party" is required under FED. R. CIV. P. 5, Defendant Doe 1 may be served in any manner permitted by the Federal Rules of Civil Procedure.

### III.    JURISDICTION AND VENUE

51.    This Court has original subject matter jurisdiction over Lovevery's claims that are brought under the Defend Trade Secrets Act. *See* 18 U.S.C. § 1836(c). This Court has original subject matter jurisdiction over Lovevery's claims that are brought under the Computer Fraud and Abuse Act. *Compare* 18 U.S.C. § 1030(g), *with* 28 U.S.C. § 1331. This Court has original subject matter jurisdiction over Lovevery's claims that are brought under the Lanham Act. *See*

**PLAINTIFF'S ORIGINAL COMPLAINT,**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

**Page 12**

15 U.S.C. § 1121(a); *compare* 28 U.S.C. § 1338(a), *with* 28 U.S.C. § 1331. This Court has

original and exclusive subject matter jurisdiction over Lovevery's claims that are brought under

the Patent Act. *See* 28 U.S.C. § 1338(a); *compare* 28 U.S.C. § 1338(a), *with* 28 U.S.C. § 1331;

*see also Gunn v. Minton*, 568 U.S. 251, 253 (2013).

52.     This Court has supplemental jurisdiction over Lovevery's other claims, since they

"are so related to claims in the action within such original jurisdiction that they form part of the

same case or controversy under Article III of the United States Constitution." 28 U.S.C. §

1367(a); *see Executive Software of N. Am., Inc. v. United States District Court for the Central

District of California*, 24 F.3d 1545 (9th Cir. 1994), *overruled on other grounds*, *California

Dep't of Water Res. v. Powerex, Inc.*, 533 F.3d 1087 (9th Cir. 2008). Alternatively, this Court

has original subject matter jurisdiction, because (i) "the matter in controversy exceeds the sum or

value of $75,000, exclusive of interest and costs," and (ii) no Defendant has the same citizenship

as Plaintiff. 28 U.S.C. § 1332; *see Exxon Mobil Corp. v. Allapattah Servs.*, Inc., 545 U.S. 546,

553–54 (2005).

53.     This Court has personal jurisdiction over each of the Defendants because each

Defendant has (i) purposefully directed activities or consummated transactions within Idaho and

with Idaho residents, including transacting business and committing torts in the forum state, (ii)

Lovevery's causes of actions arise out or are related to the activities and transactions described in

(i), and (iii) the exercise of jurisdiction in this action is reasonable. *See Hill v. Union Pac. R.R.

Co.*, 362 F. Supp. 3d 890, 894–99 (D. Idaho 2019).

54.     This Court further has personal jurisdiction over Defendant Ademiluyi due to

contractual consent. *Compare* Employment Agreement ¶ 13.1 ("I hereby expressly consent to the

personal jurisdiction and venue of the state and federal courts located in Ada County, Idaho for

any lawsuit filed there against me by Lovevery arising from or related to this Agreement."), *with M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1 (1972), *and Carnival Cruise Lines, Inc. v. Shute, Inc. v. Shute*, 499 U.S. 585 (1991), *and AMRESCO Com. Fin., LLC v. T.P. Sampson Co.*, No. CV 05-41-S-LMB, 2005 WL 1863282, at *1 (D. Idaho Aug. 4, 2005) (citations omitted) ("Federal law governs the validity of a forum selection clause. Under federal law, parties to a contract may agree in advance of litigation to submit to the personal jurisdiction of a court.").

55.     This Court is a proper venue for this action because this Court sits in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Additionally, this Court is a proper venue since Lovevery and Defendant Ademiluyi have contractually consented to this venue. *See In re Becker*, 993 F.3d 731, 732–33 (9th Cir. 2021). Alternatively, this Court is a proper venue because "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3).

## IV.    FACTS

### The Lovevery Employment Agreement

56.     Defendant Ademiluyi signed an "Employee Confidential Information and Invention Assignment Agreement" with Lovevery on October 11, 2020, a true and correct copy of which is attached as Exhibit 1 to the Shah Decl. [previously defined as the "Employment Agreement"]. Defendant Ademiluyi's offer letter provided that he would be employed as a "Front-End Engineer . . . responsible for owning and delivering the platform and related code needed for Lovevery's e-Commerce store and digital roadmap."

57.    The Employment Agreement includes a ***Non-Competition*** clause by which

Defendant Ademiluyi agreed to the following:

> **NON-COMPETITION**. I agree that if I was to become employed by, or
> substantially involved in, the business of a competitor of Lovevery during the
> Restricted Period,[1] it would be very difficult for me not to rely on or use
> Lovevery's trade secrets and Confidential Information.   Thus to avoid any
> inevitable disclosure of Lovevery's trade secrets and Confidential Information, and
> to protect such trade secrets and Confidential Information and Lovevery's
> relationships and goodwill with customers, during the Restricted Period, ***I will not
> directly or indirectly through any other person engage in, enter the employ of,
> render any services to, have any ownership interest in, nor participate in the
> financing, operation, management or control of, any Competing Business*** (as
> defined below). For purposes of this Agreement, the phrase "directly or indirectly
> through any other person engage in" shall include, without limitation, any direct or
> indirect ownership or profit participation interest in such enterprise, whether as an
> owner, stockholder, member, partner, joint venturer or otherwise, and shall include
> any direct or indirect participation in such enterprise as an employee, consultant,
> director, officer or otherwise. For purposes of this Agreement "Competing
> Business" means a person anywhere in the Restricted Area that at any time during
> my employment with Lovevery has competed, or any time during the Restricted
> Period competes, with Lovevery in the business of designing, marketing and selling
> products and services that help create developmental experiences in the lives of
> young children and their parents or in any other business engaged in by Lovevery
> or any potential business which has been submitted to the Board for consideration
> and is under consideration by the Board at any time prior to the termination of my
> employment.

Employment Agreement ¶ 6 (emphasis added).

58.    The Employment Agreement includes a ***Duty of Loyalty During Employment***

clause by which Defendant Ademiluyi agreed to the following:

> **DUTY OF LOYALTY DURING EMPLOYMENT**. I agree that during the
> period of my employment by Lovevery ***I will not, without Lovevery's express
> written consent, directly or indirectly engage in any employment or business
> activity which is directly or indirectly competitive with, or would otherwise
> conflict with, my employment by Lovevery***.

---

[1] "Restricted Period" is defined in the Employment Agreement as "the period of my employment
and for the one (1) year period after the date my employment ends." Employment Agreement
¶ 5.

Employment Agreement ¶ 4 (emphasis added).

59.     In addition, the Employment Agreement includes an ***Assignment of Inventions***

clause by which Defendant Ademiluyi agreed to the following sub-provisions:

(a)     Assignment of Lovevery Inventions

Inventions assigned to Lovevery, or to a third party as directed by Lovevery pursuant to Section 2.5, are referred to in this Agreement as "Lovevery Inventions." Except for Excluded Inventions set forth in Exhibit 1 and Other Inventions, ***I hereby assign, grant and convey to Lovevery all my right, title, and interest in and to any and all Inventions (and all Intellectual Property Rights with respect thereto) made, conceived, reduced to practice, or learned by me, either alone or with others, during the period of my employment by Lovevery***. To the extent required by applicable Copyright laws, I agree to assign in the future (when any copyrightable Inventions are first fixed in a tangible medium of expression) my Copyright rights in and to such Inventions.

Employment Agreement ¶ 2.3 (emphasis added).

(b)     Ownership of Work Product

I acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of my employment and which are protectable by Copyright are "works made for hire," pursuant to United States Copyright Act (17 U.S.C., Section 101). ***I agree that Lovevery will exclusively own all work product that is made by me (solely or jointly with others) within the scope of my employment, and I hereby irrevocably and unconditionally assign to Lovevery all right, title, and interest worldwide in and to such work product***. I understand and agree that I have no right to publish on, submit for publishing, or use for any publication any work product protected by this Section, except as necessary to perform services for Lovevery.

Employment Agreement ¶ 2.6 (emphasis added).

60.     In addition, the Employment Agreement includes a ***Confidential Information***

***Protections*** clause by which Defendant Ademiluyi agreed to the following:

**Recognition of Lovevery's Rights; Nondisclosure; Exceptions**. I understand and acknowledge that my employment by Lovevery creates a relationship of confidence and trust with respect to Lovevery's Confidential Information (as defined below) and that Lovevery has a protectable interest therein.

Employment Agreement ¶ 1.1.

At all times during and after my employment, *I will hold in confidence and will not disclose, use, lecture upon, or publish any of Lovevery's Confidential Information, directly or indirectly,* except as such disclosure, use, or publication may be required in connection with my work for Lovevery, or unless an officer of Lovevery expressly authorizes such disclosure. I will obtain Lovevery's written approval before publishing or submitting for publication any material (written, oral, or otherwise) that discloses and/or incorporates any Confidential Information. I hereby assign to Lovevery any rights I may have or acquire in such Confidential Information and recognize that all Confidential Information shall be the sole and exclusive property of Lovevery and its assigns. I will take all reasonable precautions to prevent the inadvertent accidental disclosure of Confidential Information.

Employment Agreement ¶ 1.1(a) (emphasis added).

61.     Finally, the Employment Agreement provides that Defendant Ademiluyi agreed with the following *Legal and Equitable Remedies* clause:

I agree that it may be impossible to assess all of the damages caused by my violation of this Agreement or any of its terms. I agree that any threatened or actual violation of this Agreement or any of its terms will constitute immediate and irreparable injury to Lovevery, and Lovevery will have the right to enforce this Agreement and any of its provisions by injunction, specific performance, or other equitable relief, without bond and without prejudice to any other rights and remedies that Lovevery may have for a breach or threatened breach of this Agreement, including without limitation the recovery of damages, direct and consequential.

Employment Agreement ¶ 10.1.

<u>Defendants Ademiluyi Misappropriates the PlayGenius name and creates PlayGenius.com</u>

62.     The name "PlayGenius" was selected by Lovevery to describe its front end and back end ecommerce solution later than January 11, 2021.  Shah Decl. at ¶5

63.     On or about January 11, 2021, Defendant Ademiluyi learned that Lovevery had devised the name "PlayGenius" for its childhood development and toy related e-commerce platform.  Shah Decl at ¶6. Defendant Ademiluyi worked extensive on Lovevery's PlayGenius platform and was well aware that the name was in use by his employer Lovevery.  *Id.*

**PLAINTIFF'S ORIGINAL COMPLAINT,**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

**Page 17**

64.     On February 18, 2023, the domain name PlayGenius.com was registered by webhosting service GoDaddy.com. The current registered owner is "Domains By Proxy, LLC." Hoffman Decl., Exhibit 20 (DOMAINTOOLS, DOMAIN REPORT - PLAYGENIUS.COM) at 3, 123.

65.     On February 20, 2023, the name server—which is part of a Domain Name System and essentially helps with translating domain names into Internet Protocol addresses—for the domain name PlayGenius.com was transferred to DomainControl.com, which on information and belief is a name server belonging to GoDaddy Inc. *Id.* at 123.

66.     On information and belief, PlayGenius.com is currently hosted on servers belonging to or under the control of Shopify Inc. *Id.* at 3.

67.     The PlayGenius.com website says that "*PlayGenius.com is launching on . . . May 27, 2023.*" Hoffman Decl., Exhibit 7 at 1 (emphasis added).

68.     The PlayGenius.com website describes PlayGenius.com as a toy business that is Montessori-inspired and directed to boxes that are packed with educational materials optimized for children of a certain age range in exactly the same way and using similar language to Lovevery:

> PlayGenius.com is the right place for parents to buy Montessori toys that are right for their children's age. We curated a collection of toys that are both appropriate for different age groups and affordable for every family. We make it easy for parents to choose the right toys based on their child's age by organizing our collections into educational boxes for different ages. Our Montessori boxes are carefully curated for safety and appropriateness, and our prices are affordable.

*Id.* at 5.

69.     The PlayGenius.com website purports to offer for sale various "Montessori Educational Box[es]" that are directed to children of a certain age range. *Id.* at 27.

**PLAINTIFF'S ORIGINAL COMPLAINT,**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

**Page 18**

70.    For example, the "0-6 Months Montessori Educational Box," which is shown

below, allegedly includes "10 captivating black and white cards, a magic tissue box with 5 fabric

tissues, a mesmerizing beaded raindrops toy, a spinning drum, a delightful rainbow baby roller, a

rainbow ball, and an instruction manual":



*Id*. at 49-51 (0-6 MONTHS MONTESSORI EDUCATIONAL BOX, https://playgenius.com/products/0-6-

months-educational-box (last visited May 4, 2023)).

71.    The PlayGenius.com product shown above is a counterfeit imitation of

Lovevery's The Sensor Play Kit, which has been reproduced below from above:

72.     On information and belief, the "magic tissue box" included in the

PlayGenius.com product shown and described above (hereinafter the "Infringing Product")

contains elements that correspond literally to or are equivalents of each claim limitation of at

least claim 1 of Lovevery's U.S. Patent No. 10,987,605 ("the '605 Patent").

73.     The PlayGenius.com website advertises an app called "BlaBla Kids" and provides

links to access that app on the Apple App Store and the Google Play Store. *See* Hoffman Decl.,

Exhibit 7 at 10 (PLAYGENIUS.COM'S "BLABLAKIDS" MONTESSORI GAMES FOR KIDS 2-5,

https://playgenius.com/pages/game-app (last visited May 4, 2023)) (providing hyperlinks to

BLABLA KIDS: TODDLER GAMES ON THE APP STORE, https://apps.apple.com/us/app/blabla-kids-

toddler-games/id1664690879 (last visited May 6, 2023) and BLABLAKIDS: TODDLER GAMES,

https://play.google.com/store/apps/details?id=com.omyteq.blablakids (last visited May 6, 2023)).

The PlayGenius.com Apps

74.     As noted above, the BlaBla Kids app is associated with Defendant Ademiluyi and Defendant Mb Agency. And as noted below, the BlaBla Kids app is also associated with Defendant Odelana, Defendant Oyediran, and Defendant Doe 1.

75.     The BlaBla Kids app has been available on the Apple App store at least since January 26, 2023. "Desmond Ademiluyi" is listed as the developer and seller of the BlaBla Kids app on the Apple App store. *See* Hoffman Decl., Exhibit 21 (BLABLA KIDS: TODDLER GAMES ON THE APP STORE, https://apps.apple.com/us/app/blabla-kids-toddler-games/id1664690879 (last visited May 6, 2023)).

76.     On March 17, 2023, a person using the name "Yinkalana" left a review for the app. *Id.* at 7. On information and belief, that reviewer is Defendant Odelana.

77.     Emails sent from Apple regarding the submission of BlaBla Kids app and issues with the BlaBla Kids have been sent to multiple email accounts, ***including Defendant Ademiluyi's Lovevery email account***. For example, an email titled "App Store Connect: Your app 'Blabla Kids: Toddler Games' (Apple ID: 1664690879 Version: 1.2.1 Build: 1) has one or more issues" was sent "[t]o: desmondtoyus@gmail.com, desmond@lovevery.com, christinaolla216@gmail.com, m.oyediran306@gmail.com, [and] wadeyinka11@gmail.com." Shah Decl., Exhibit 2 at 2.

78.     As noted above, on information and belief, these email accounts belong to Defendant Ademiluyi, Defendant Odelana, Defendant Oyediran, and Defendant Doe 1.

79.     The BlaBla Kids app is available on the Google Play store. Hoffman Decl., Exhibit 22 (BLABLAKIDS: TODDLER GAMES, https://play.google.com/store/apps/details?id=com.omyteq.blablakids (last visited May 4, 2023)).

Under "Developer contact," a hyperlink to https://playgenius.com/pages/game-app is provided. *Id.* at 2. Additionally, under "Developer contact," the address "5345 Pennsylvania Street, Merrillville Indiana IN46410" is listed.  As noted above (*supra* ¶¶ 19 and 27) and in Hoffman Decl., Exhibit 14 (Tax Record for Property No. 45-12-03-103-007.000-031), this address is associated with Defendant Ademiluyi and Defendant Odelana.

80.    According to the Google Play Store, the developer of the BlaBla Kids app is also the developer of an app called "Playful Learning."  *See* Hoffman Decl., Exhibit 23 (PLAY GENIUS: PLAYFUL LEARNING, https://play.google.com/store/apps/details?id=com.playgenius.playful.learning (last visited May 6, 2023)).

81.    As noted below, the Playful Learning app is associated with Defendant Ademiluyi, Defendant Odelana, Defendant Oyediran, and Defendant Doe 1.

82.    While the Playful Learning app currently appears not to be listed on the Apple App store, it appears that at one point it was. For example, an email titled "App Store Connect: Your app 'Play Genius: Playful Learning' (Apple ID: 6447490695 Version: 1.0.5 Build: 1.0.5) has one or more issues" was sent "[t]o: playgenius.gp@gmail.com, desmondtoyus@gmail.com, desmondtoyus@icloud.com, desmond@lovevery.com, christinaolla216@gmail.com, m.oyediran306@gmail.com, [and] wadeyinka11@gmail.com." Shah Decl., Exhibit 2 at 1.  As noted above, on information and belief, these email accounts belong to Defendant Ademiluyi, Defendant Odelana, Defendant Oyediran, and Defendant Doe 1.

The PlayGenius.com Social Media Accounts

83.    On February 19, 2023, a YouTube page was created with the username "PlayGeniusdotcom." Under the heading "Links," that YouTube page provides a hyperlink that

redirects to http://www.playgenius.com/. *See* Hoffman Decl., Exhibit 12. On March 6, 2023, the

PlayGeniusdotcom YouTube page posted a video that shows a user apparently navigating

"playgenius.com" *See* PlayGeniusdotcom, March 6, 2023, YOUTUBE (Mar. 6, 2023),

https://www.youtube.com/shorts/4eJoZtjEKRk.

84.     On or before March 2, 2023, an Instagram page was created with the username

"playgeniuskids." Hoffman Decl., Exhibit 11.  That page provides a link to

http://www.playgenius.com/. One of the followers of that Instagram account is

"dr.desmondtoye," which on information and belief belongs to Defendant Ademiluyi. Another

follower of that Instagram account is "ifeoluwaola," which on information and belief belongs to

Ms. Ifeoluwa Olla (possibly Defendant Doe 1), who on information and belief is married to

Defendant Ademiluyi. *See* Hoffman Decl., Exhibits 10, 11, 15, and 24 (OLLA IFEOLUWA,

https://www.instagram.com/ ifeoluwaola/ (last visited May 6, 2023)).

85.     On March 2, 2023, the playgeniuskids Instagram posted a picture of a website and

in an accompanying caption said: "PlayGenius.com has age-appropriate, affordable Montessori

toys and mobile games that help kids learn and grow. Our curation of age-based toys and games

makes it easy for parents to choose the right toys. . . . [S]hop at playgenius.com today and give

your child the gift of learning through play." Hoffman Decl., Exhibit 11 at 2 (PLAYGENIUS.COM

MONTESSORI MOBILE GAMES, https://www.instagram.com/p/CpTmKWbvb0n/ (last visited May

4, 2023)).

86.     On March 2, 2023, a Facebook page was created with the username

"PlayGeniusKids." *See* Hoffman Decl., Exhibit 9.  Under the heading "Additional contact info,"

that page lists http://www.playgenius.com/. Additionally, under the heading "About," that page

says: "PlayGenius.com offers age-appropriate, affordable Montessori toys and mobile games that

help kids learn and grow. Our curation of age-based toys and games makes it easy for parents to choose the right toys and games for their child." *See Id.* at 1 (PLAYGENIUS.COM MONTESSORI MOBILE GAMES, https://www.facebook.com/PlayGeniusKids/about (last visited May 1, 2023)).

<u>Copied Material on Defendant Ademiluyi's GitHub Account</u>

87.     As noted above, on information and belief, Defendant Ademiluyi is the owner of the GitHub account with the username "desmondtoyus."

88.     The GitHub account desmondtoyus has publicly posted source code copied without permission from Lovevery's source code repositories. *See* Shah Decl. ¶¶ 10-18.

89.     The GitHub account desmondtoyus has been used by Defendant Ademiluyi to access Lovevery's private and restricted repositories on GitHub. *See id.* ¶ 10.

90.     The commit history of code publicly posted on GitHub by desmondtoyus shows that the initial commit occurred on December 15, 2022 and further indicates that Defendant Ademiluyi is the author and committer. *See id.* ¶ 11.

91.     Analysis of the initial commit shows that the initial commit contains many of the same files as an upload to Lovevery's confidential sourcecode repository on December 13, 2022. Analysis further indicates that Defendant Ademiluyi created a copy of a portion of Lovevery's December 13, 2022 confidential code on his public Github. *See id.* ¶ 12.

92.     The "next-blog-main" repository uploaded by desmondtoyus includes Lovevery's name and logo. *See id.* ¶ 13.

93.     Other files within the directory uploaded by desmondtoyus include the Lovevery name. *See id.* ¶ 14.

**PLAINTIFF'S ORIGINAL COMPLAINT,**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

**Page 24**

94.    The seo.json file uploaded by desmondtoyus (Exhibit 6 to the Shah Decl.) also includes numerous references to Lovevery, the Lovevery website, and Lovevery content. *See id.* ¶ 15; *see also id.*, Exhibit 6 at lines 2-6, 15-30.

95.    Analysis further shows that the following files on Mr. Ademiluyi's Github account are a copy from the December 13, 2022 upload at Lovevery:

(a)    .storybook/main.js

(b)    .storybook/preview.js

(c)    .storybook/webpack.config.js

(d)    LICENSE.md

(e)    README.md

(f)    Everything in the _mocks_ folder

(g)    cypress.config.ts

(h)    cypress/ components /Loading.cy. tsx

(i)    cypress/e2e/app.cy.ts

(j)    cypress /fixtures/ exam ple.json

(k)    cypress/support/commands.ts

(l)    cypress /support/ component-index.html

(m)    cypress/support/component.ts

(n)    cypress/support/e2e.ts

(o)    cypress/tsconfig.json

(p)    jest.config.js

(q)    jest.setup.js

(r)    next.config.js

(s)    public/assets/fonts/

**PLAINTIFF'S ORIGINAL COMPLAINT,**                                           **Page 25**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

(t)     public/favicon.png

(u)     renovate.json

(v)     src/components/common/Head/Head.tsx

(w)     src/components/common/Loader/Loader.module.scss

(x)     src/ components/ common/Loader /Loader.stories.tsx

(y)     src/components/common/Loader/Loader.test.tsx

(z)     src/components/common/Loader/Loader.tsx

(aa)    src/config/seo.json

(bb)    src/constants.ts

(cc)    src/ styles/base.css

(dd)    src/styles/globals.css

(ee)    src/styles/settings/variables.scss

(ff)    src/ styles/tools/ mlxins.scss

*See id.* ¶ 16.

96.     The above mentioned files were copied and publicly posted without Lovevery's permission.  In addition, analysis shows that, beyond the files with Lovevery logos or names, the src/constants.ts file contains a reference to Lovevery's loading animation and the public/assets/fonts directory includes Lovevery's font files.  These files could not be in Mr. Ademiluyi's files unless they were copied from Lovevery.  *See id.* ¶ 17.

97.     Analysis further shows that the copied package.json, seo.json, and favicon.png files, in addition to many other files listed above in *supra* ¶ 95, are also located in another repository on Mr. Ademiluyi 's GitHub account called "next-shop-tailwind-main."  This code was also taken from Lovevery.  *See id.* ¶ 18.

**PLAINTIFF'S ORIGINAL COMPLAINT,**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

**Page 26**

Lovevery's Trade Secrets and Confidential Business and Technical Information

98.    Without limitation, the following items include Lovevery trade secrets and/or confidential business and technical information:

    1)  The source code, algorithms, and e-commerce know-how Lovevery's incorporated into Lovevery's PlayGenius front end and back end e-commerce website; and

    2)  Lovevery's proprietary and confidential techniques and algorithms for integrating e-commerce functionality with childhood development information and family data integration.

99.    Each of these items derive economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. 18 U.S.C. § 1839(3)(B).

100.    Lovevery has taken reasonable measures to protect its trade secrets and other confidential business and technical information, including, without limitation:

    3)  Maintaining its sourcecode in a private repositories that can only be accessing by authorized accounts using password-based access controls;

    4)  Restricting access to sourcecode to Lovevery personnel needing such information for the performance of their job duties.

    5)  Locking facilities to prevent access by unknown parties.

    6)  Requiring all employees to sign confidentiality agreements.

Shah Decl., ¶ 8

101.    As noted above Defendants have established and are in the process of developing a competing business at least accessible at playgenius.com selling kits of childhood toys that are substantially copied from Lovevery.

102.    The graphics used by Defendants on their boxes are also copied in style and font from Lovevery.

**PLAINTIFF'S ORIGINAL COMPLAINT,**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

**Page 27**

103.    On information and belief, Defendants have used confidential and trade secret Lovevery software code, know-how, and experience to create playgenius.com. As noted above, the playgenius.com website was first registered on February 18, 2023. In two months or less, Defendants have been able to create what appears to be a full operational e-commerce website with multiple copied toy kits, supporting mobile app, and childhood/parent content. On information and belief, this rapid development timeline is only possible because Defendant Ademiluyi used his access as a Lovevery employee to access confidential and trade secret Lovevery software code, know-how, and experience for use by playgenius.com.

## V.    CAUSES OF ACTION

### COUNT I: Breach of Contract

104.    Lovevery incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

105.    Defendant Ademiluyi and Lovevery entered into a valid and binding Employment Agreement.

106.    Per Idaho Code § 44-2701-2704, Defendant Ademiluyi is a "Key Employee" by reason of Lovevery's investment of time, money, trust, or exposure to technologies, intellectual property, business plans, business processes, and methods of operation, customers, vendors or other business relationships during the course of employment and has gained a high level of inside knowledge, influence, credibility, and, as a result, have the ability to harm or threaten an employer's legitimate business interests. As a Key Employee, the restrictive covenants in Defendant Ademiluyi's Employment Agreement are presumptively enforceable if reasonable as to duration (presumed reasonable up to 18 months (*See* I.C. § 44-2704)), geographic area (presumed reasonable if with the same geographic area in which Lovevery does business (*See*

*id.*)), and type of employment or line of business (presumed reasonable if the same as Lovevery's business (*See id.*)).

107.    Lovevery performed as specified in the Employment Agreement, by paying the compensation and providing the benefits agreed to thereunder.

108.    On information and belief, Defendant Ademiluyi breached the non-competition clause of paragraph 6 of the Employment Agreement by participating and/or engaging in business activity which directly competes, and conflicts with, his employment by Lovevery, including but not limited to creating the playgenius.com website, advertising & offering competing products for sale on the playgenius.com website, and creating & offering competing software and applications to potential Lovevery customers – all while employed at Lovevery.

109.    On information and belief, Defendant Ademiluyi breached the Duty of Loyalty During Employment clause of paragraph 4 of the Employment Agreement by participating and/or engaging in business activities which directly competes, and conflicts with, his employment by Lovevery, including but not limited to creating the playgenius.com website, advertising & offering competing products for sale on the playgenius.com website, and creating & offering competing software and applications to potential Lovevery customers – all while employed at Lovevery.

110.    On information and belief, Defendant Ademiluyi breached the Confidential Information Protections clause of Paragraph 1.1 of the Employment Agreement at least by disclosing and using Lovevery confidential information in the creation of the playgenius.com website and his personal GitHub account.

111.    Lovevery has suffered and will suffer additional economic losses as a result of the foregoing breaches of contract.

**PLAINTIFF'S ORIGINAL COMPLAINT,**                                    **Page 29**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

112.     Accordingly, Lovevery is entitled to recover those economic losses as actual damages. Moreover, Lovevery is entitled to recover consequential damages resulting from Defendant Ademiluyi's multiple breaches of the Employment Agreement, including, without limitation, lost sales and lost profits that are the foreseeable and traceable result of the failures of Defendant Ademiluyi to honor his obligations.

### COUNT II: Declaratory Judgment of Ownership (22 U.S.C. § 2201 & Idaho 10-1201)

113.     Lovevery incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

114.     Defendant Ademiluyi and Lovevery entered into a valid and binding Employment Agreement.

115.     Lovevery performed as specified in the Employment Agreement, by paying the compensation and providing the benefits agreed to thereunder.

116.     Paragraph 2.6 of the Employment Agreement states the following: "I agree that Lovevery will exclusively own all work product that is made by me (solely or jointly with others) within the scope of my employment, and I hereby irrevocably and unconditionally assign to Lovevery all right, title, and interest worldwide in and to such work product."

117.     The scope of Defendant Ademiluyi's employment includes the development of software, websites, applications, and software support related to the childhood play / education as well as e-commerce.

118.     Defendant Ademiluyi has surreptitiously developed at least software, a website, and applications within the scope of his employment, including the playgenius.com website, the BlaBla kids application, and GitHub software code.

119.    Per the terms of the Employment Agreement, Defendant Ademiluyi has assigned "all right, title, and interest worldwide" in at least (a) the playgenius,com website, software, and related social media accounts; (b) the BlaBla kids application or other childhood focused application in all of their incarnations (Apple App Store, Google Play Store, and Microsoft App Store); and (c) software posted to Defendant Ademiluyi's GitHub website related to e-commerce (collectively, the "Already Assigned Lovevery Work Product").

120.    Defendants have retained control and falsely claimed ownership of the Already Assigned Lovevery Work Product.

121.    Accordingly, there exists a controversy between Lovevery and Defendants over ownership and control of the Already Assigned Lovevery Work Product.

122.    Lovevery is entitled to a declaration declaring that the Already Assigned Lovevery Work Product is the exclusive property of Lovevery.

### COUNT III: Trade Secret Misappropriation under
### the Defend Trade Secrets Act, 18 U.S.C. § 1836

123.    Lovevery incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

124.    Lovevery possessed trade secrets and took reasonable measures to maintain their confidentiality and trade secret nature.

125.    The trade secrets were used in or intended for use in interstate commerce—i.e., Lovevery's age appropriate toy business.  18 U.S.C. § 1836(b)(1).

126.    Either Defendants knew, or had reason to know, that the secrets were improperly obtained, or Defendants used improper means to obtain them.  18 U.S.C. § 1839(5)(A); 18 U.S.C. § 1839(5)(B)(i).

127.    On information and belief, Defendants have used Lovevery's trade secrets at least to create the playgenius.com website that advertises competing toy products.  18 U.S.C. § 1839(5)(B).

128.    Defendant Ademiluyi agreed in his Employment Agreement that there would be inevitable disclosure of Lovevery trade secrets if Defendant Ademiluyi went to work for a competing company, such as playgenius.com.  *See* Shah Decl., Exhibit 1 at ¶6.

129.    Defendants' acquisition, disclosure, and use of the trade secrets has caused and is causing Lovevery to suffer actual loss, which it is entitled to recover.  18 U.S.C. § 1836(b)(3)(B)(i)(I).

130.    Additionally, Lovevery is entitled to recover damages for any unjust enrichment caused by the misappropriation of its trade secrets and not addressed in computing damages for actual loss.  18 U.S.C. § 1836(b)(3)(B)(i)(II).

131.    Alternatively, Lovevery is entitled to recover a reasonable royalty for Defendants' unauthorized disclosure and use.

132.    Defendants' misappropriation of Lovevery's trade secrets was willful and malicious.    Accordingly, Lovevery is entitled to recover exemplary damages. 18 U.S.C § 1836(b)(3)(C).  For the same reason, Lovevery is entitled to recover its reasonable attorneys' fees. 18 U.S.C. § 1836(b)(3)(D).

### COUNT IV: Computer Fraud and Abuse Act (18 U.S.C. § 1030)

133.    Lovevery incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

134.    Defendant Ademiluyi knowingly and with intent to defraud, accessed a protected computer and exceeded his authorized access.  By means of such conduct, Defendant Ademiluyi

furthered the intended fraud and obtained at least valuable trade secrets, industry know how, and program files in violation of 18 U.S.C. § 1030(a)(4).

135.    Defendants' conduct caused at least over $5,000 in losses in any 1-year period.

136.    Defendants' conduct began within 2 years of the date of discovery of the damage to Lovevery.

137.    Lovevery is entitled to at least economic damages and an injunction under 18 U.S.C. § 1030(g).

## COUNT V: Trademark Infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

138.    Lovevery incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

139.    Lovevery has a pending trademark application for the mark "Magic Tissue Box." *See* U.S. Trademark Application Serial No. 97/301,794 (filed Mar. 8, 2022) (Exhibit 25 to the Hoffman Decl.).

140.    Lovevery has used the mark "Magic Tissue Box" on its products, such as The Senser Play Kit, at least as early as 2018.

141.    On information and belief, Defendants have used Lovevery's mark in commerce by, for example, advertising, offering for sale, selling, and distributing goods or services that use the mark "Magic Tissue Box," such as PlayGenius.com's "0-6 Months Montessori Educational Box."

**PLAINTIFF'S ORIGINAL COMPLAINT,**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

**Page 33**

**Description:**

The 0-6 Months Educational Box is an incredible collection of toys designed to help your little one explore and discover the world around them. This box includes 10 captivating black and white cards, a magic tissue box with 5 fabric tissues, a mesmerizing beaded raindrops toy, a spinning drum, a delightful rainbow baby roller, a rainbow ball, and an instruction manual to guide you through all the fun and learning.

Hoffman Decl., Exhibit 7 at 50.

142.    Defendants' use of the mark "Magic Tissue Box" "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A).

143.    On information and belief, Defendants' use of "Magic Tissue Box" has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by its direct copying of Lovevery's mark in an effort to sell its own products.

144.    Lovevery is entitled to injunctive relief, and Lovevery is also entitled to recover at least Defendants' profits, actual damages, enhanced profits and damages, costs, and Defendants' reasonable attorney fees under at least 15 U.S.C. §§ 1114(1), 1116, and 1117.

### COUNT VI: Patent Infringement under 35 U.S.C. § 271(a)

145.    Lovevery incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

146.    Lovevery is the owner of U.S. Patent No. 10,987,605 ("the '605 patent") (Exhibit 26 to the Hoffman Decl.).

147.    The '605 Patent is directed towards a child development toy including a box and a set of flexible sheets.

148.    On information and belief, the "Magic Tissue Box" advertised on playgenius.com is a copy of Lovevery's patented Magic Tissue Box. The playgenius.com copy includes a box defining an interior compartment and an aperture extending into the interior compartment through a side of the box. On information and belief, the playgenius.com copy also includes a set of flexible sheets that meet the limitation set forth in claim 1 of the '605 patent.

149.    Defendants have infringed and continue to infringe at least claim 1 of the '605 Patent in violation of 35 U.S.C. § 271(a) by offering to sell the Infringing Product and on information and belief by making the Infringing Products and/or importing the Infringing Products into the United States, which are covered by at least claim 1 of the '605 Patent.

150.    Defendants' acts of infringement have been without express or implied license by Lovevery, are in violation of Lovevery's rights, and will continue unless enjoined by this Court.

151.    Lovevery has been, is being, and will continue to be injured and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief at least under at least 35 U.S.C. §§ 281, 284, and 285.

152.    Lovevery also has caused, is causing, and will continue to cause irreparable harm to Lovevery for which there is no adequate remedy at law and for which Lovevery is entitled to injunctive relief under at least 35 U.S.C. § 283.

153.    Defendants' infringement is also willful, and Lovevery is entitled to treble damages.

### COUNT VII: Idaho Uniform Trade Secrets Act

154.    Lovevery incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

155.    To the extent, if any, that the Defend Trade Secrets Act (the "DTSA") does not apply to Defendants' action, Lovevery asserts a claim against Defendants under the Idaho Trade Secrets Act ("ITSA"), as set forth in Title 48, Chapter 8 of the Idaho Code.

156.    As noted above, Lovevery's trade secrets include, without limitation, those contained in: its supplier lists; customer lists; business plans; and product plans.

157.    Lovevery's confidential technical and business information is not readily ascertainable by proper means by others in the industry, but rather is the product of Lovevery's independent research and development and business experience and resources.  Because of this, Lovevery derives significant independent economic value from its confidential technical and business information.  Lovevery made reasonable efforts to maintain the secrecy of the above-described trade secrets.  Defendants misappropriated Lovevery's trade secrets through disclosure of use of same in the development of the playgenius.com products.

158.    Either Defendants knew, or had reason to know, that the secrets were improperly obtained, or Defendants used improper means to obtain them.  *See* Idaho Code Ann. § 48-801(2)(a); Idaho Code Ann. § 48-801(2)(b)(A).

159.    On information and belief, Defendants have used Lovevery's trade secrets at least to create the playgenius.com website that advertises competing toy products.  *See* Idaho Code Ann. § 48-801(2)(b).

160.    Defendant's acquisition, disclosure, and use of the trade secrets has caused and is causing Lovevery to suffer actual loss, which it is entitled to recover.  Idaho Code Ann. § 48-803.

161.    Additionally, Lovevery is entitled to recover damages for any unjust enrichment caused by the misappropriation of its trade secrets and not addressed in computing damages for actual loss. *Id.*

162.    Alternatively, Lovevery is entitled to recover a reasonable royalty for Defendants' unauthorized disclosure and use. *Id.*

163.    Defendants' misappropriation of Lovevery's trade secrets was willful and malicious.    Accordingly, Lovevery is entitled to recover exemplary damages. *Id.*

## COUNT VIII: Breach of Fiduciary Duty

164.    Lovevery incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

165.    Under the law of Idaho, employees owe a duty of loyalty to their employers, regardless of whether they are at-will employees or have employment contracts. *R Homes Corp. v. Herr*, 123 P.3d 720, 723 (Idaho App. 2005) ("Loyalty to his trust is the first duty which an agent owes to his principal" (quoting *Jensen v. Sidney Stevens Implement Co.*, 36 Idaho 348, 353, 210 P. 1003, 1005 (1922)).  The duty of loyalty requires that an agent not compete with his principal concerning the subject matter of his agency. *R. Holmes Corp.*, 123 P.3d at 273.

166.    Defendant Ademiluyi was an employee of Lovevery and, therefore, had a duty of loyalty to Lovevery.

167.    Defendant Ademiluyi breached his duty of loyalty by disclosing Lovevery confidential information to Defendants, using the information for the business purposes of playgenius.com, and competing against Lovevery while working for Lovevery.

168.    Defendant Ademiluyi's breach of his fiduciary duty to Lovevery has caused Lovevery actual damages or loss, which Lovevery is entitled to recover.

169.    Lovevery is also entitled to recover punitive damages from Defendant Ademiluyi given the deliberate and willful nature of the breach.

### COUNT IX: Intentional Interference with Contracts

170.    Lovevery incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

171.    Defendant Ademiluyi's Employment Agreement with Lovevery was a contract subject to interference.

172.    On information and belief, Defendants had knowledge or should have been aware of Defendant Ademiluyi's Employment Agreement with Lovevery.

173.    On information and belief, Defendants asked and encouraged Defendant Ademiluyi to breach his obligations under the Employment Agreement under at least paragraphs 1.1, 4, and 5.

174.    Defendant Ademiluyi's breach of the Employment Agreement has proximately caused Lovevery actual damages or loss, which Lovevery is entitled to recover from Defendants.

### COUNT X: Unjust Enrichment

175.    Lovevery incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

176.    Defendants have been unjustly enriched by, *inter alia*, misappropriation of confidential business and technical information belonging to Lovevery.  Such information has been of significant value and benefit to Lovevery, and the circumstances are such that it would be unjust for Defendants to retain the benefits conferred upon them by continuing to use and profit from Lovevery's confidential information without payment to Lovevery for the value thereof.

177.    Defendants have appreciated the benefit conferred to them by, for example, using the misappropriated confidential business and technical information belonging to Lovevery in creating playgenius.com.

178.    Defendants' wrongful conduct and unjust enrichment have caused and will continue to cause actual damages to Lovevery, which Lovevery is entitled to recover.

### COUNT XI: Breach of Covenant of Good Faith and Fair Dealing

179.    Lovevery incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

180.    Defendant Ademiluyi and Lovevery entered into a valid and binding Employment Agreement.

181.    Lovevery performed as specified in the Employment Agreement, by paying the compensation and providing the benefits agreed to thereunder.

182.    On information and belief, Defendant Ademiluyi breached numerous clauses of the Employment Agreement as outlined in Count I.

183.    Defendant Ademiluyi's breaches as outlined in Count I have significantly impaired Lovevery's rights and benefits under the Employment Contract.

184.    Lovevery has suffered economic losses as a result of the foregoing breach of Covenant of Good Faith and Fair Dealing.

185.    Accordingly, Lovevery is entitled to recover those economic losses as actual damages. Moreover, Lovevery is entitled to recover consequential damages resulting from Defendant Ademiluyi's breach of the Covenant of Good Faith and Fair Dealing, including, without limitation, lost sales and lost profits that are the foreseeable and traceable result of Defendant Ademiluyi's failure to honor his obligations under the Employment Agreement.

## COUNT XII: Interference with Prospective Economic Advantage

186.     Lovevery incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

187.     Lovevery has a valid economic expectancy through the sale of its childhood toys and subscription toy packages.

188.     Defendants knew or should have known of Lovevery's valid economic expectancy, by, for example, Defendant Ademiluyi's employment at Lovevery.

189.     On information and belief, Defendants intentionally interfered with Lovevery's economic expectancy, by, for example, using Lovevery's confidential information and intellectual property to create and operate playgenius.com which has resulted in the termination of at least some of Lovevery's expectancy.

190.     On information and belief, Defendants' interference was wrongful because Defendants, for example, used Lovevery's confidential information and intellectual property which was improperly obtained through Defendant Ademiluyi's breach of his Employment Agreement.

191.     Lovevery has suffered actual damages or loss as a result of Defendants interference and resulting disruption in expectancy, which Lovevery is entitled to recover.

## COUNT XIII: Unfair Methods and Practices under the Idaho Consumer Protection Act (Idaho Code § 48-603)

192.     Lovevery incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

193.     On information and belief, Defendants know or in the exercise of due care should have known that the playgenius.com, now and in the past, passes off goods or services as those of another.

**PLAINTIFF'S ORIGINAL COMPLAINT,**                                            **Page 40**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

194.    On information and belief, Defendants know or in the exercise of due care should have known that the playgenius.com, now and in the past, causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

195.    On information and belief, Defendants know or in the exercise of due care should have known that the playgenius.com, now and in the past, causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another.

196.    On information and belief, Defendants know or in the exercise of due care should have known that the playgenius.com, now and in the past, represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, connection, qualifications or license that he does not have.

197.    On information and belief, Defendants know or in the exercise of due care should have known that the playgenius.com, now and in the past, engages in acts or practices that are otherwise misleading, false, or deceptive to the consumer.

198.    Lovevery has suffered actual damages or loss as a result of Defendants violation of the Idaho Competition Act, which Lovevery is entitled to recover.

## COUNT XIV: Civil Conspiracy

199.    Lovevery incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

200.    On information and belief, Defendants entered into an agreement between two or more persons to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner.  *See Argonaut Ins. Co. v. White*, 86 Idaho 374, 386 P. 2d 964 (1993)

(explaining that the wrongful acts committed by conspirators resulting in injury are what give rise to a cause of action for civil conspiracy)

201.    For example, on information and belief, Defendants entered into an agreement between two or more persons to misappropriate Lovevery's confidential information and intellectual property and form a company based on that misappropriated material.

202.    In addition, on information and belief, Defendants entered into an agreement between two or more persons to cause or induce Defendant Ademiluyi's breach of his Employment Agreement.

203.    By way of these wrongful acts, Lovevery has suffered actual harm or loss, and is entitled to recover for these damages.

## VI.    APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

204.    Lovevery incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

205.    A TRO or preliminary injunction is warranted where the movant establishes (1) a likelihood of success on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of hardships tip in favor of granting the requested relief; and (4) that injunctive relief is in the public interest. *See Paddock v. Dixon*, 1:21-CV-00493-DCN, 2021 WL 6197104, at *2 (D. Idaho Dec. 30, 2021).

206.    As stated above and in the concurrently filed LR 7.2 Plaintiff's Memorandum of Law in Support of its Application for an Ex Parte Order, Defendants have misappropriated and, unless enjoined, will continue to misappropriate Lovevery's property, confidential information and trade secrets by disclosing Lovevery's confidential information to third parties and using

**PLAINTIFF'S ORIGINAL COMPLAINT,**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

**Page 42**

Lovevery's software, designs, trademarks, and technology as their own. The evidence submitted herewith indicates a high likelihood of success on the merits for Lovevery. There is no possible dispute that Defendant Ademiluyi is a current employee of Lovevery who is subject to an employment agreement that (a) imposes a duty of loyalty on him, (b) prohibits him from competing against the company, (c) prohibit disclosure and use of Lovevery confidential and trade secret information, and (d) assigns all of his work related to his employment to Lovevery. From Lovevery's investigation, there appears to be little room for doubt that Defendant Ademiluyi and the co-defendants have taken a name developed by Lovevery and started a rival toy company that will begin selling products on May 27th. Success is very likely here.

207. Irreparable harm is an imminent and substantial risk if the requested preliminary relief is not granted. The playgenius.com website indicates that it will go live on May 27, 2023. While the mere existence of the playgenius.com website causes Lovevery harm, that harm will be irreparable if Defendants are permitted to (a) compete with Lovevery using Lovevery's own property and confidential information; (b) introduce inferior copied products into the market that will reflect poorly on Lovevery and potentially reflect poorly on Lovevery; and (c) erode the reputation and the value of the name "PlayGenius," which Lovevery developed and Defendants' misappropriated from Lovevery;.

208. Irreparable harm is also imminent in the form of the destruction of evidence. Defendants have undertaken a campaign to surreptitiously misappropriate, publish, and use Lovevery confidential information, trade secrets, and protected intellectual property. While obligated by his employment agreement to be loyal to Lovevery, Defendant Ademiluyi has undertaken a plot to use Lovevery resources to build a competing business while drawing a Lovevery paycheck. Defendant Ademiluyi has a history of erasing his company laptop in

PLAINTIFF'S ORIGINAL COMPLAINT,                                      **Page 43**
APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE, AND MOTION
FOR PRELIMINARY INJUNCTION

contravention of Lovevery policy, and there is strong reason to believe that Defendant Ademiluyi will erase/transfer the contents of his laptop and other accounts when he learns that his dubious actions have been uncovered.   Moreover, in case like this, in which the large bulk of the evidence will be in electronic form on a limited number of computers, spoliation is a particular risk.

209.    Moreover, in paragraph 10 of the Employment Agreement signed by Defendant Ademiluyi, he agreed that a breach or threatened breach of any of the provisions of the Employment Agreement's terms would cause Lovevery "constitute immediate and irreparable injury to Lovevery" and that "Lovevery will have the right to enforce this Agreement and any of its provisions by injunction, specific performance, or other equitable relief, without bond…"

210.    Additionally, any potential harm to Defendants from the issuance of the requested injunctive relief is far outweighed by the potential harm to Lovevery, a company with a long history of investment in intellectual property creation and significant, established customer relationships that are subject to interference.

211.    Additionally, the issuance of the requested order will advance the public interest of protecting victims of trade secret misappropriation and preserving the rights of injured parties to seek the adjudication of their disputes on the merits.

212.    For the foregoing reasons and pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, Lovevery is entitled to and requests the entry of a temporary restraining order in the form attached hereto as **Exhibit A,** which is incorporated herein by reference as if set forth fully herein.

213.    By his signature below, Lovevery's counsel certifies that notice to Defendants should not be required prior to the issuance of the requested restraining order due to the risks of

spoliation, trade secret destruction, and interference with existing, substantial customer relationships, as supported by the allegations herein and the declarations submitted herewith.

214.    Lovevery is ready, willing, and able to provide a bond in an amount the Court considers proper as security pursuant to Rule 65(b), however, as noted above, Defendant Ademiluyi agreed in paragraph 10 of the Employment Agreement that no bond is required for Lovevery to receive injunction relief.

## VII.    REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIONS

215.    Lovevery incorporates by reference each of the foregoing paragraphs as if set forth fully herein.

216.    Lovevery further requests that the Court, upon notice and a show cause hearing, enter a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and 18 U.S.C.A. § 1836(b)(3)(A), enjoining Defendants and any their officers, agents, servants, employees, and attorneys and other persons who are in active concert with them from using or disclosing any confidential information or trade secrets it misappropriated from Lovevery, or from using or selling any products containing or derived from such Lovevery confidential information or trade secrets or employing any Lovevery trademarks or patented features.

217.    Upon the trial of this case, Lovevery requests the entry of a permanent injunction affording substantially the same relief and the destruction or return of all Lovevery confidential information or trade secret.

## VIII.    JURY DEMAND

218.    Lovevery hereby demands trial by jury of all issues so triable.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Lovevery, Inc., respectfully requests that the Court:

1) grant Lovevery's application for temporary restraining order, entering a temporary restraining order and show cause order in the form submitted herewith;

2) upon a show cause hearing, issue a preliminary injunction order enjoining the Defendants from (a) accessing, using, disseminating, maintaining, or otherwise misappropriating Lovevery's property (including the Already Assigned Lovevery Work Product) or any Lovevery trade secrets, as authorized by 18 U.S.C. § 1836(b)(3)(A), and (b) competing against Lovevery using the PLAYGENIUS name, playgenius.com website, or BlaBla kids application.

3) issue a permanent injunction ordering Defendants to return all of the Lovevery's property and trade secrets, and ultimately destroy all remaining copies of Lovevery's trade secrets and any other of Lovevery information, and refrain from using any of Lovevery's Property, information, or trade secrets in any way in the future;

4) issue a judgment declaring that the Already Assigned Lovevery Work Product and any additional Lovevery property in Defendants' possession is the rightful property of Lovevery and order Defendants to return or transfer all Lovevery property back to Lovevery;

5) award Lovevery its actual damages, consequential damages, exemplary damages, pre- and post-judgment interest, costs, and reasonable attorneys' fees; and

6) award Lovevery such other and further relief to which it may show itself justly entitled, at law or in equity.

//

//

**PLAINTIFF'S ORIGINAL COMPLAINT,**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

**Page 46**

DATED this 9th day of May, 2023.

GIVENS PURSLEY LLP

*/s/ Robert B. White*
Robert B. White

FISH & RICHARDSON P.C.

*/s/ David M. Hoffman*
David M. Hoffman
*Attorneys for Plaintiff, Lovevery, Inc.*

**PLAINTIFF'S ORIGINAL COMPLAINT,**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER**
**AND ORDER TO SHOW CAUSE, AND MOTION**
**FOR PRELIMINARY INJUNCTION**

**Page 47**

EXHIBIT A

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LOVEVERY, INC., | Case No. _____ |
| Plaintiff, | |
| v. | |
| DESMOND T. ADEMILUYI D/B/A PLAYGENIUS.COM, ADEYINKA O. ODELANA, MAYOWA O. OYEDIRAN, MB AGENCY D/B/A OMYTEQ, AND JANE DOE 1, WHOSE TRUE NAME IS UNKNOWN; | **EX PARTE TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE** **FILED UNDER SEAL** |
| Defendants. | |

Plaintiff, Lovevery, Inc. ("Lovevery"), has filed a Complaint for injunctive and other relief pursuant to the Defend Trade Secrets Act, the Lanham Act, the Patent Act, the Idaho Trade Secrets Act, and, among other causes of action, breach of contract. Lovevery has included with its Complaint an application for a temporary restraining order and a show cause order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. The Court has considered the allegations in Lovevery's "Verified Original Complaint, Application for Ex Parte Temporary Restraining Order and Order to Show Cause, and Motion for Preliminary Injunction," as well as the accompanying materials submitted therewith, and is of the opinion that Lovevery has made a very strong showing for the necessity of an ex parte order. Lovevery has shown a substantial likelihood of success on the merits of its claims against Defendants for trade secret misappropriation, Lanham Act violations, and breach of Employment Agreement provisions governing employee loyalty, non-competition, the handling of confidential information and/or trade secrets. There is good cause to believe that Defendant Ademiluyi has violated the terms of his Employment Agreement and

**TEMPORARY RESTRAINING ORDER &
ORDER TO SHOW CAUSE**                                                          **Page 1**

misappropriated Lovevery's trade secrets and confidential information and that the remaining Defendants have cooperated or conspired with him on that front.

The Court is further of the opinion that Lovevery has clearly shown that the threat of irreparable injury, loss, or damage is imminent and strong and will result to Lovevery before the Defendants can be heard in opposition if the restraining order is not issued without notice. Specifically, there is good cause to believe that, if alerted in advance, Defendants will take steps to damage or compromise Lovevery's brand name, reputation, and trade secrets through disclosure, use, or other breach of the confidentiality attached to them, will take steps to move or hide property belonging to Lovevery outside of this jurisdiction, and will be able to hide or destroy evidence of their wrongdoing, impairing the prosecution of this case..

Lovevery has also made a sufficient showing that the threatened injury to Lovevery outweighs the potential harm to Defendants. Furthermore, the issuance of the requested relief will advance rather than disserve the public interest by preserving the rights of injured parties to seek the adjudication of their disputes on the merits.

Accordingly, the application is GRANTED, and it is hereby ORDERED:

<u>**Restrictions on Use and Destruction of Property**</u>

Until the expiration of this order or the issuance of a further order by the Court, whichever occurs earlier, Defendants, their officers, agents, servants, employees, and attorneys, and those acting in concert with them, are enjoined from:

1.     Transferring, disclosing, selling, licensing, publishing, copying, using, or destroying any confidential technical or business information and/or trade secret information of Lovevery (whether held by playgenius.com or otherwise), including, without limitation, software, apps, program files, product design documents, supplier lists, customer lists, business plans, sales data, and other financial data;

2.     Destroying, concealing from discovery, or altering in any fashion: (a) any evidence of the use by any Defendants of any confidential technical or business information and/or trade secret information belonging to Lovevery, including, without limitation, for the business and/or

**TEMPORARY RESTRAINING ORDER &**
**ORDER TO SHOW CAUSE**                                               **Page 2**

product development purposes of playgenius.com; (b) any products derived through the use of Lovevery confidential information and/or trade secrets. The materials covered by this restriction shall include, but are not limited to, electronically stored information, hard copy documents, emails, text messages, "instant messages," voicemail messages, telephone and fax records, and copies/records relating to any other mode of written or oral communication.

       3.     Destroying, concealing from discovery, or altering in any fashion any evidence of any efforts by Defendants to invite, solicit, or encourage existing customers of Lovevery products or services to purchase or use products of playgenius.com that compete directly with those of Lovevery. The materials covered by this restriction shall include, but shall not be limited to, electronically stored information, hard copy documents, emails, text messages, "instant messages," voicemail messages, telephone and fax records, and copies/records relating to any other mode of written or oral communication.

       4.     Accessing, distributing, transferring, or otherwise relocating playgenius.com related code, computer files, computer programs, software, and/or repositories to any other electronic device.

       In addition, until the expiration of this order or the issuance of a further order by the Court, whichever occurs earlier, Defendants, their officers, agents, servants, employees, and attorneys, and those acting in concert with them, are enjoined from continuing to operate, support, run, or otherwise enable playgenius.com and the desmondtoyus github account (https://github.com/desmondtoyus). The playgenius.com website and desmondtoyus github account are hereby ordered to be taken down pending hearing. Defendants are further enjoined from selling any playgenius.com inventory, or otherwise continuing to compete with Lovevery until further order from this Court. Defendants, their officers, agents, servants, employees, and attorneys are required to take down playgenius.com until the expiration of this order or the issuance of a further order by the Court.

**TEMPORARY RESTRAINING ORDER &**
**ORDER TO SHOW CAUSE**                                    **Page 3**

## Seizure of Materials; Entry of Premises; Preservation of Accounts

**On May 11, 2023, at 9:00 a.m. PST (or as soon thereafter as reasonably practicable),** **officers of the U.S. Marshals Service Central District of California Office** are to serve this Temporary Restraining Order and the Complaint and summons for the above-referenced action on Desmond T. Ademiluyi at 3304 Avenida Del Presidente Apt 2, San Clemente, CA 92672-4535 (the "San Clemente Premises") or wherever he may be found. Effective immediately upon service of this Order upon Mr. Ademiluyi or other resident of the San Clemente Premises, the officers of the U.S. Marshals Service and representatives of the attorneys representing Lovevery shall be permitted to *non-forcefully enter* the San Clemente Premises (and/or such other premises in Orange County, California, that Mr. Ademiluyi has the ability to make available, which Mr. Ademiluyi is ordered to do in a reasonable time on the day of entrance and which contain any of the items listed below), where Mr. Ademiluyi, individually and in his capacity as an agent and representative of playgenius.com, is ordered to immediately produce to Plaintiff's agents (such as Plaintiff's counsel, Mr. David Hoffman) for seizure the following items:

1) Any and all electronic devices relating to the operation of playgenius.com, including computers and storage drives, including but not limited to:

   a. Mr. Ademiluyi's Lovevery-issued Macbook laptop.

2) Source code, program files, or other computer code used in, or in conjunction with, the operation of playgenius.com.

3) Any and all hardcopy playgenius.com branding, marketing materials, business information, customer information, supplier information, employee lists, development information, and business plans, including but not limited to:

   a. Any and all information and documentation surrounding the origins, creation, founding, development, maintenance, operation, and launch plans for playgenius.com; and

   b. Any and all information and documentation on playgenius.com's target customers, existing customers, sales, finances, business plans, employee lists, supplier information, existing orders, incoming

shipments of inventory, received shipments of inventory, and future planned products.

4) Any and all Lovevery property, including but not limited to Lovevery's confidential information, trade secrets, business information, supplier information, customer information, source code, program files, marketing materials, products, merchandise, and toys.

Items falling under the foregoing four categories shall hereinafter be referred to herein as the "SUBJECT MATERIALS." The "San Clemente Premises" and any other premises in Orange County, California referred to hereinabove are included in the definition of "playgenius.com Premises" as that term is used herein.

In addition, the following actions will be taken to ensure that evidence is not deleted or transferred:

1) Defendant Ademiluyi will provide username, password, and other necessary login information required to access the following accounts:

   a. Playgenius.com
   b. DesmondToyus@gmail.com;
   c. DesmondToyus@icloud.com;
   d. DesmondToyus@yahoo.com;
   e. PlayGenius.gp@gmail.com;
   f. https://www.facebook.com/desmondtoye;
   g. https://www.facebook.com/PlayGeniusKids;
   h. https://www.linkedin.com/in/desmondademiluyi;
   i. https://www.instagram.com/dr.desmondtoye/;
   j. https://www.instagram.com/playgeniuskids/;
   k. https://www.youtube.com/@PlayGeniusdotcom; and
   l. https://github.com/desmondtoyus
   m. other accounts identified by Defendant Ademiluyi associated with Playgenius.com

2) Counsel for Lovevery is ordered to change the passwords protecting each of the above listed accounts to a password that counsel will maintain pending hearing. Counsel may also change any "reset password" email address necessary to prevent circumvention of the changed password(s).

3) Both parties and counsel are ordered to not access the accounts listed above pending a hearing with the Court except that Counsel for Lovevery is permitted to verify every 3 days that Defendant Ademiluyi has not changed

**TEMPORARY RESTRAINING ORDER &**
**ORDER TO SHOW CAUSE**                                                    **Page 5**

the passwords for any of the accounts.

Plaintiff's counsel is ordered to change the password on the above mentioned accounts to preserve evidence and prevent any deletion or transfer pending hearing in front of this Court. Outside of the above outlined verification, Plaintiff is ordered to not access any of the accounts or review any of the content within any of the accounts until further order of the Court or agreement of the parties. Mr. Ademiluyi is further ordered to not access any of the accounts or websites listed in this order again until further order of the Court or agreement of the parties. Mr. Ademiluyi is further **prohibited** from changing, or attempting to change, any of the newly set passwords for the above accounts until further order of the Court or agreement of the parties.

One or more officers of The U.S. Marshals Service shall remain present for the duration of the seizure of the SUBJECT MATERIALS and the Preservation of Evidence by Plaintiff's agents, to ensure cooperation by Mr. Ademiluyi and to ensure that the playgenius.com Premises and property of Mr. Ademiluyi are not damaged by Plaintiff's agents. In terms of cooperation, ***Mr. Ademiluyi is further ordered***: (1) to assist Plaintiff's agents in locating the SUBJECT MATERIALS, including identifying all accounts related to playgenius.com; (2) to provide any user IDs, passwords (including providing the current and all previous passwords for the laptop that Lovevery issued to Mr. Ademiluyi), and/or encryption keys or other information necessary to allow Plaintiff's agents to verify access to the SUBJECT MATERIALS ***during*** the seizure; (3) to allow Plaintiff's agents to change the passwords to the above mentioned account, including performing any two-factor authentication necessary to allow such password change; (4) to unlock any locked cabinets, desks, drawers, safes, buildings, offices, storage facilities, or other locked rooms or spaces containing SUBJECT MATERIALS; and (5) to permit the representatives of the U.S. Marshal's Office and Plaintiff's agents to use restrooms at the Premises while the seizure effort is taking place.

**TEMPORARY RESTRAINING ORDER &**
**ORDER TO SHOW CAUSE**                                    **Page 6**

Any materials produced in accordance with this section shall be treated as "Confidential" under the terms of the standard form protective order for the District of Idaho (attached hereto as Exhibit 1), until further order of the Court or agreement of the parties.

For any expert (external or internal) engaged prior to a preliminary injunction hearing, Defendants shall have three days from the date it is informed of a proposed expert to provide an objection. In the event of an objection, the parties will immediately contact the undersigned so that it may be ruled upon. To the extent, if any, that there is any conflict or inconsistency between this Temporary Restraining Order and the Court's standard Protective Order attached as Exhibit 1, the provisions of this Temporary Restraining Order shall control.

Defendants shall have until May 19, 2023 to provide a privilege log for any documents seized by Plaintiff's agents pursuant this order. The privilege log shall be considered notification pursuant to F.R.C.P. 26(b)(5)(B) for any documents listed upon it and Lovevery is ordered to comply with the provisions of the rule upon receipt of the privilege log. This provision does not prevent future application of F.R.C.P. 26(b)(5)(B) by either party.

Lovevery shall be responsible for and shall cause to be promptly paid to the U.S. Marshal's Office full reimbursement for the time of its officers in California at the established rates and any mileage or other related charges at established rates. In the event that any property of the Mr. Ademiluyi is alleged to have been damaged in the course of the seizure, Mr. Ademiluyi shall hold harmless the U.S. Marshal's Office, and submit evidence of such damages and the value of same to the Court for consideration as a potential charge against Lovevery.

Plaintiff's agents shall be permitted to take photographs or video of the above-described premises and any and all items located therein. Any electronic copies, photocopies, photographs, or other duplicates created by Plaintiff's agents pursuant to this Temporary Restraining Order shall be treated as "Confidential" under the terms of the standard form protective order for the District of Idaho.

**TEMPORARY RESTRAINING ORDER &**
**ORDER TO SHOW CAUSE**                                                    **Page 7**

**Expedited Discovery**

On or before May 22, 2023, the Defendants shall produce the following documents to Lovevery (to the extent not already seized and copied by or at the request of Plaintiff's agents pursuant to this order), via its counsel, Fish & Richardson P.C., at 111 Congress Avenue, Suite 810, Austin, Texas 78701, any documents, including electronic and hard copy documents, showing or referring to:

1) Communications occurring on or after January 1, 2022 between any Defendant and any employee of Lovevery, including Defendant Ademiluyi, relating to the business of Lovevery, toy products, playgenius, Lovevery's products, Lovevery's customers, and/or Lovevery's suppliers.

2) Communications occurring on or after January 1, 2022 between any Defendant and any existing Lovevery customer relating to any effort by Defendants to solicit the business of the customer about using any playgenius.com products or planned products in place of any competing Lovevery products or planned products.

3) Any communications between Defendants relating to the founding of, creation of, operation of, programming of, coding of, maintenance of playgenius.com.

4) Any communications between Defendants and any third parties relating to the playgenius business or planned business, Lovevery, Lovevery's products and/or personnel, and/or the acquisition of products to sell via playgenius.com.

5) Any confidential Lovevery technical or business information, including, without limitation: Lovevery customer lists; Lovevery business and marketing plans; Lovevery supplier lists; and Lovevery sales, costs, and other finance and accounting information.

6) Physical samples of any and all products or inventory marketed, listed, advertised, or otherwise pictured on playgenius.com, whether in the past, present, or planned for the future.

Any materials produced in accordance with this section shall be treated as "Confidential" under the terms of the standard form protective order for the District of Idaho, until further order of the Court or agreement of the parties.

With reasonable notice to counsel for Lovevery, Mr. Ademiluyi shall be made available for deposition by Lovevery on a date during the week of May 22, 2023, at a mutually agreeable

location in the Orange County area, pursuant to Rule 30(b)(1) of the Federal Rules of Civil Procedure.

This deposition shall last no more than 4 hours of total deposition time and shall not exhaust any portion of Lovevery's right to take depositions in this case, including its right to take a later 30(b)(1) depositions of Mr. Ademiluyi.  To the extent otherwise admissible, and within the discretion of the Court, the transcript from the expedited deposition or a preliminary copy of same may be used as evidence at the preliminary injunction hearing. In the event that adequate document production is not made by Defendants adequately in advance of the proposed deposition date, Lovevery has the discretion to seek an extension of this Temporary Restraining Order and of the deposition date to allow for more complete production and document review prior to the deposition.

A telephonic status conference will be held on _____ at the following dial-in _____. All parties are expected to appear via counsel. At the status conference, the parties' counsel are to inform the Court of the status of the expedited discovery, and the Court will address with counsel the setting of the hearing at which Defendants are to show cause, if there is any, regarding why a preliminary injunction should not issue.

It is further ordered that Defendants must file with the Court and deliver to Plaintiff's counsel any pleadings, materials, affidavits, briefs, legal memoranda, expert reports, declarations, or other materials no later than two days prior to the preliminary injunction hearing.  Plaintiffs may file responsive supplemental pleadings, materials, declarations, or legal memoranda and serve same on counsel for Defendants no later than one day prior to the preliminary injunction hearing.

Upon signature of this Temporary Restraining Order, Lovevery must post a $_____ bond under Rule 65(c) of the Federal Rules of Civil Procedure.

This order expires 14 days after its service or upon further order of the Court.

**TEMPORARY RESTRAINING ORDER &**
**ORDER TO SHOW CAUSE**                                              **Page 9**

<<end of text>>
Submitted by:
Robert B. White
GIVENS PURSLEY LLP
Counsel for Plaintiff, Lovevery, Inc.

EXHIBIT 1

**EXHIBIT 1**

*[MODEL SINGLE-TIER PROTECTIVE ORDER]*
**[Attorney Information]**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| _____, | Case No. _____ |
| Plaintiff, | |
| v. | **STIPULATED** |
| | **PROTECTIVE ORDER** |
| _____, | |
| Defendant. | |

One or more of the parties in this matter anticipates the production of documents or information that at least one party considers to be, or to contain, confidential, proprietary, trade secret, or commercially or personally sensitive information, and that may be appropriately subject to protection under Federal Rule of Civil Procedure 26(c).

The parties agree that good cause exists to protect the confidential nature of the information contained in certain documents, interrogatory responses, responses to requests for admission, or deposition testimony. The parties agree that the entry of this Stipulated Protective Order ("Protective Order") is warranted to protect against disclosure of such documents and information.

Based upon the above stipulation of the parties, and the Court being duly advised, IT IS HEREBY ORDERED as follows:

**STIPULATED PROTECTIVE ORDER - 1**

1.      Use of any information or documents labeled "Confidential" and subject to this Protective Order, including all information derived therefrom, shall be restricted solely to the litigation of this case and shall not be used by any party for any other purpose. This Protective Order, however, does not restrict the disclosure or use of any information or documents lawfully obtained by the receiving party through means or sources outside of this litigation. Should a dispute arise as to any specific information or document, the burden shall be on the party claiming that such information or document was lawfully obtained through means and sources outside of this litigation.

2.      The Parties acknowledge that this Protective Order does not confer blanket protections on all disclosures during discovery or in the course of making initial or supplemental disclosures under Rule 26(a). Designations under this Protective Order shall be made with care and shall not be made absent a good faith belief that the designated material satisfies the criteria set forth below. The Designating Party shall consider whether appropriate redactions can address the need for confidentiality in lieu of designating a document as confidential. If it comes to the attention of any party or non-party that discloses or produces any discovery material that designated material does not qualify for protection at all or does not qualify for the level of protection initially asserted, the designating party must promptly notify all other parties that it is withdrawing or changing the designation.

3.      The parties, and third parties subpoenaed by one of the parties, may designate as "Confidential" documents, testimony, written responses, or other materials produced in this case if they contain information that the producing party has a good faith basis for asserting is confidential under the applicable legal standards. The party shall designate each page of the document with a stamp identifying it as "Confidential," if practical to do so. Within thirty (30) days after receipt of the final transcript of the

STIPULATED PROTECTIVE ORDER - 2

deposition of any party or witness in this case, a party or the witness may designate as "Confidential" any portion of the transcript that the party or witness contends discloses confidential information. Unless otherwise agreed, all deposition transcripts shall be treated as "Confidential" until the expiration of the thirty-day period.

4.     If portions of documents or other materials deemed "Confidential," or any papers containing or making reference to confidential portions of such materials are filed with the Court, they shall be filed under seal and marked according to the provisions of District of Idaho Local Civil Rule 5.3. The parties acknowledge that this Protective Order may not entitle them to permanently seal all documents or information marked "Confidential" filed with the Court.

5.     In seeking to file a document under seal, the parties understand there is a strong presumption in the Ninth Circuit in favor of access to court records and that sealing a document from public view is the exception. In addition, the parties understand that the Court will evaluate any motion to seal either under a finding of good cause for non-dispositive motions or a compelling reason supported by specific facts for dispositive motions. See *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir. 2006). The designating party bears the burden to establish the facts necessary to seal such information or documents.

6.     If the designating party is filing with the Court documents or information that it marked "Confidential," it shall file a motion to seal pursuant to District of Idaho Local Civil Rule 5.3 that sets forth the specific facts necessary to justify the sealing of the documents or information. If the non-designating party is filing with the Court documents or information marked "Confidential" by another party, the non-designating party shall file a motion to seal pursuant to District of Idaho Local Civil Rule 5.3 explaining that it is not the party that designated the documents or information as "Confidential" and either: (a)

setting forth its understanding as to why the documents or information have been designated "Confidential" by another party, or (b) specifically objecting to the documents or information being designated as "Confidential" by another party and/or maintained under seal by the Court. If the non-designating party raises an objection or fails to adequately support the justification for sealing, the designating party may respond to the motion to seal, setting forth the specific facts necessary to justify maintaining confidentiality and filing the documents under seal.

      7.    Use of any information, documents, or portions of documents marked "Confidential," including all information derived therefrom, shall be restricted solely to the following persons, who agree to be bound by the terms of this Protective Order, unless additional persons are added by the stipulation of counsel or authorized by the Court:

    a.    Outside counsel of record for the parties, and the administrative staff of outside counsel's law firms.

    b.    In-house counsel for the parties, and the administrative staff for each in-house counsel.

    c.    Any party to this action who is an individual, and every employee, director, officer, or manager of any party to this action who is not an individual, but only to the extent necessary to further the interest of the parties in this litigation.

    d.    Independent consultants or expert witnesses (including partners, associates, and employees of the firm which employs such consultant or expert) retained by a party or its attorneys for purposes of this litigation, but only to the extent necessary to further the interest of the parties in this litigation.

    e.    The Court and its personnel, including, but not limited to, stenographic reporters regularly employed by the Court and stenographic reporters not regularly employed by the Court who are engaged by the Court or the parties during the litigation of this action.

f.      The authors and the original recipients of the documents.

g.      Any court reporter or videographer reporting a deposition.

h.      Employees of copy services, microfilming or database services, trial support firms, and/or translators who are engaged by the parties during the litigation of this action.

i.      Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order.

j.      Any fact witness in this matter to whom disclosure is reasonably necessary.

k.      Any other person with the prior written consent of the designating party.

8.      Prior to being shown any documents produced by another party marked "Confidential," any person listed under paragraphs 7(d), 7(i), 7(j), and 7(k) shall agree to be bound by the terms of this Order by signing the agreement attached as Exhibit A.

9.      Whenever information designated as "Confidential" pursuant to this Protective Order is to be discussed by a party or disclosed in a deposition proceeding, the designating party may exclude from the room any person, other than persons designated in paragraph 7, as appropriate, for that portion of the deposition.

10.     Notwithstanding the above, the Court shall determine a party's right to use documents or information marked "Confidential" at a hearing, trial, or other proceeding in this action. The Court may also require the redaction of personal identifiers of confidential information before use at a hearing, trial, or other proceeding in this action. The designation of "Confidential" shall not affect the Court's determination as to whether the material shall be received into evidence; nor shall such designation constitute the authentication of such

material or a waiver of any right to challenge the relevance, confidentiality, or admissibility of such material. This Protective Order shall not govern the admission of evidence at trial in open court. Should a designating party believe that documents, materials, or information designated as "Confidential" should not be used in open court during trial, the designating party will have the burden to seek such protections from the Court prior to trial.

11.     Each party reserves the right to dispute the confidential status of documents or information claimed by any other party or subpoenaed party in accordance with this Protective Order. If a party believes that any documents or materials have been inappropriately designated as "Confidential" by another party or subpoenaed party, that party shall confer in good faith with counsel for the designating party. As part of that conferral, the designating party must assess whether redaction is a viable alternative to a confidential designation. If the parties cannot reach an agreement, the parties shall use the Court's informal discovery dispute process to seek a resolution, if the Court uses one. If the parties are unable to resolve the matter informally, the designating party shall file an appropriate motion before the Court requesting that the Court determine whether the Protective Order covers the document in dispute. The designating party bears the burden of establishing good cause for why the document should not be disclosed. A party who disagrees with another party's designation must nevertheless abide by that designation until the matter is resolved by agreement of the parties or by order of the Court.

12.     The inadvertent failure to designate a document, testimony, or other material as "Confidential" prior to disclosure shall not operate as a waiver of the party's right to later designate the document, testimony, or other material as "Confidential" or limit in any way a party's ability to recall or "claw back" privileged materials that may have been inadvertently disclosed. The receiving party or its counsel shall not disclose such documents or materials if that party knows or reasonably should know that a claim of

STIPULATED PROTECTIVE ORDER - 6

confidentiality would be made by the producing party. Promptly after receiving notice from the producing party of confidentiality claim, the receiving party or its counsel shall inform the producing party of all pertinent facts relating to the prior disclosure of the newly designated documents or materials and shall make reasonable efforts to retrieve such documents and materials and to prevent further disclosure.

13.    Designation by either party of information or documents as "Confidential," or failure to so designate, will not constitute an admission that information or documents are or are not confidential or trade secrets. Neither party may introduce into evidence in the litigation, other than a motion to determine whether the Protective Order covers the information or documents in dispute, the fact that the other party designated or failed to designate information or documents as "Confidential."

14.    Upon the request of the producing party, within 30 days after the entry of a final judgment no longer subject to appeal on the merits of this case, or the execution of any agreement between the parties to resolve and settle this case, the parties, and any person authorized by this Protective Order to receive confidential information, shall return to the producing party or third party, or destroy, all information and documents subject to this Protective Order. Returned materials shall be delivered in sealed envelopes marked "Confidential" to respective counsel. The party requesting the return of materials shall pay the reasonable costs of responding to its request. Notwithstanding the foregoing, counsel for a party may retain archival copies of confidential documents including any copies which contain work-product.

15.    This Protective Order shall not constitute a waiver of any party's or non-party's right to oppose any discovery request or object to the admissibility of any document, testimony, or other information.

16.    Nothing in this Protective Order shall prejudice any party from seeking

amendments to expand or restrict the rights of access to, and use of, confidential information, or other modifications, subject to order by the Court.

17.    The restrictions on disclosure and use of confidential information shall survive the conclusion of this action.

So stipulated:

_____                    _____
[Counsel for Plaintiff]                                  [Counsel for Defendant]

The Court has reviewed the reasons offered in support of entry of this Stipulated Protective Order and finds that there is good cause to protect the confidential nature of certain information. Accordingly, the Court adopts the above Stipulated Protective Order in this action.

**IT IS SO ORDERED.**

DATED: _____        _____
                                                Judge Signature

## EXHIBIT A

I, _____, have been advised by counsel of record for

_____ in _____

of the protective order governing the delivery, publication, and disclosure of

confidential documents and information produced in this litigation. I have read a copy

of the protective order and agree to abide by its terms.

_____
Signed

_____
Printed

_____
Date